In our third case, Jane Roe v. Marshall University Board of Governors. Ms. Meth? Good morning, Your Honors. I'm Madeline Meth, and I direct the Appellate Clinic at Boston University School of Law. And it's my pleasure to introduce my colleague and student attorney, Gregory Bowe, who will be handling this morning's argument on behalf of Appellant Jane Roe. Good to have you with us, and we appreciate Mr. Bowe. Yes, come forward. Your Honors, and may it please the Court, Greg Bowe for Appellant Jane Roe. I'd like to request four minutes for rebuttal. When Jane Roe reported to Marshall University that she had been sexually assaulted by her ex-boyfriend, John Doe, Marshall made her situation worse. Instead of protecting Roe and her access to education, Marshall investigated and punished her. I'll begin by addressing the causation element of Roe's retaliation claim. Marshall says that its hands were tied and that it had to investigate and punish Roe because of her underage drinking at a September 3rd party. But that can't be true, because both Roe and Doe told Marshall of other students that were drinking underage at that same party, and Marshall did not investigate or punish them. I thought they both refused to give names of anybody else who was drinking. Your Honor, that is what Marshall says, but Roe actually specifically named a Marshall student who was at that party in her first meeting with Student Conduct. Doe also offered to provide— I don't think she named an individual, but I'm not aware of anything in the record that indicates that that person was a Marshall student. Well, we know that that student was— What we're talking about is what's in the record. So does the record show that? Well, at JA 518, we can see that in her deposition, Roe explained that that other student, Abby, was indeed a Marshall student. All right, but that's different than whether during the investigation she told the Marshall University folks that's what this person was, because this only came after the fact. Well, that's true, Your Honor, but I think it's a reasonable inference for this court to draw that Roe either explained that fact to the Student Conduct Office or that the Student Conduct Office understood there to be more Marshall students at that party, considering how both Roe and Doe were Marshall students at that party. The only material difference, Your Honors, between Roe and those other students that were at that party is that Roe had engaged in protected activity by reporting sexual harassment, and those other students did not. All Marshall has done in trying to rebut that evidence is create a genuine dispute of material fact. Yeah, that's interesting, though. I mean, the kind of implication of that is that if someone makes a complaint like we have here and information through the course of that report, does involve conduct that is serious and contrary to policies, what's the school supposed to do? I mean, you could have a policy that says if you bring such a claim, as a matter of policy, we're not going to prosecute you at all or do any investigation or anything. I mean, that could be something the school does, but I wonder if that's necessarily improper not to have that. I mean, why can't a school discover facts of misconduct by a person reporting an event and take action on those? And why is that what we have here? It may seem less serious because there's probably a good bit of underage drinking going on at most colleges, but still it's a violation. And we could replace it with underage drinking with something more serious, and your argument seems like it would keep the college from prosecuting or taking action on that type of event. Right, so our argument- How is underage drinking defined here? Excuse me, Your Honor. Underage drinking, how is that defined? 18, 21? I think it would be 21, Your Honor. What's the age? Under 21? Right. That's by state statute. Or by West Virginia law. Yes, Your Honor. So our argument is really- There'd be a lot of students at Marshall University and a large percentage of them would be under 21, wouldn't they? That's right, Your Honor. And our argument is specific to underage drinking in that we know from research that underage drinking is often a factor in assaults on college campuses. And that's why it's specifically underage drinking and not other kinds of potentially more harmful student conduct violations that should really not be allowed to be prosecuted by these schools when it comes to light in the course of a student conduct. So that's the rule you want? That if the misconduct that's investigated, we have a special rule for underage drinking? Is that what you're advocating for? That is a rule that we advocate for, but this court doesn't need to go that far in order to remand Roe's retaliation claim. All that Roe needs to show is that Marshall took materially adverse action against her because of her protected activity. And the evidence that Roe points to goes beyond just this comparator evidence. She also points to evidence showing what Marshall's real motive was in punishing Roe and evidence of procedural irregularities in its investigation into her, which shows that Marshall's purported legitimate reasons for punishing her are pretextual. So the record shows that Marshall's real motivation for punishing Roe was to chill Title IX reporting and thereby protect its reputation. At the time Roe reported her harassment, Marshall had ample reason to shield its Title IX office from further scrutiny. It had been sued three times in recent years over deficiencies in its Title IX office, and it was aware that a USA Today article criticizing its Title IX office was going to be published soon. So on this evidence, a reasonable jury could… So how does investigating Jane Roe help Marshall in that regard? So, Your Honor, a reasonable jury could conclude that in order to chill Title IX reporting, Marshall funneled Roe's case out of its Title IX office, investigated and punished Roe to send Roe and reasonable students in her shoes a message that reporting sexual harassment to Marshall was a bad idea and it will have bad consequences for those who do it. And that Marshall won't support you. Sounds like you've got a theory, but not much evidence. Well, Your Honor, I think the fact that Marshall treated Roe differently from those similarly situated students at the party is evidence. I think that Marshall had… But the record, as you've recited it, only had one other person that was identified, and there seems to be some confusion as to whether or not that was a student, but there's no evidence that that person was underage, is there? I think it's a reasonable inference to draw, Your Honor, that at least some of the five Marshall students that we now know who were at that party were underage and drinking. Doe explained that there were 10 people at the party and that all of them were drinking. As I believe Judge King mentioned earlier, most students at the campus are probably under the age of 21. A lot of them are, I'm sure. A sizable number, I would suspect, are. That's right, that's right. And that's why I think… Do you have any evidence of whether these were freshmen or seniors or grad students or anything like that? Well, based on the ages of Roe and Doe, I think it's a reasonable inference to draw that some of those five other students who were there were underage. I'd like to turn now to Roe's deliberate indifference claim. In this case, Marshall responded in a clearly unreasonable manner to student-on-student sexual harassment that it had substantial control over. Marshall's clearly unreasonable conduct included its punishment of Roe, its failure to investigate the incidents of harassment that occurred prior to September 3rd that Roe reported to Marshall's Student Conduct Office, Marshall's failure to offer Roe any meaningful supportive measures, as well as its decision to funnel Roe's case out of its Title IX office. And the circumstances also show that Marshall had substantial control over the context of Roe's harassment. Davis and Hurley make clear that when a school has the remedial authority to address harassment, it has substantial control over the context of that harassment. Is that right? I thought that your statement would be true if you said over the conduct of the assaulter that disciplinary action would be enough to do that. But are you saying that disciplinary action, the ability to discipline a student, equals the ability to have control over the context? Well, Your Honor, we're not saying that disciplinary authority equals control over context. Control over context is a different question than control over harasser. But we are saying that disciplinary authority is relevant to control over context. And that's because the level of disciplinary authority that a school has over a context affects how much influence the school has over student conduct in that context. I assume, though, if you could, I mean, we have a specific element, the case law says, about control over the assaulter. And discipline, you know, authority goes to that. It sounds like you're saying when you go to the separate issue of control over context, that issue is relevant to that question, too. Okay. Besides that, what's your evidence in the record that there was control over this context? So, Your Honor, in addition to disciplinary authority, we also look to some of the factors that this court looked to in Feminist Majority Foundation v. Hurley, such as where the harassment occurred, which was in the immediate vicinity of campus, who the harassment specifically targeted, which here was Rowe, a Marshall student. And we also have to consider that the harassment wasn't limited to the September 3rd assault. Rowe reported incidents that occurred prior to September 3rd. And then the harassment also spilled over onto Marshall's campus in the form of the hostile environment that Marshall allowed to exist there. And Marshall certainly had the authority and the ability to take steps to remedy the hostile environment. For example, it could have given Rowe supportive measures. For instance, it could have provided her with mental health supports, given that she had developed a fear of returning to campus, and indeed almost completely avoided campus for over a year after her assault. It could have identified ways for her to make up work. And it could have helped her communicate the circumstances of her student conduct violation to her nursing supervisors, so she could have avoided the humiliation she felt when she told them about it. Now, Marshall maintains that it provides such measures to all victims of sexual assault, but Marshall made the clearly unreasonable decision here to not offer any of those measures to Rowe. And it made that decision knowing just how severe the September 3rd assault was, and knowing that Rowe had abused her in the past. The interim no-contact order between Rowe and Rowe that Marshall put in place doesn't mean that Marshall's response was at all reasonable. On the contrary, the no-contact order is a half-hearted remedial measure, which is insufficient to relieve Marshall of liability. And that's specifically because Marshall never informed Rowe that the no-contact order was still effective after her punishment. We actually don't really know if the order remained effective after her punishment. And because it never told her that, as I said before, Rowe was terrified to return to campus out of fear of seeing Doe, and she avoided campus almost completely for over a year after her assault. One other way that Marshall's conduct was clearly unreasonable here was that it decided to transfer Rowe's case out of its Title IX office and dismiss it as a Title IX matter, without having enough information to make a good-faith determination that the harassment had occurred outside of a school program or activity. For instance, Marshall didn't check to see whether a school-sponsored event had occurred at the location where Rowe's case occurred. It was a school-sponsored event where Rowe was assaulted. Is the standard for this issue deliberate indifference? Yes, the standard is deliberate indifference. So it's not enough to sustain the claim that they could have kept this as a Title IX claim. They have to have done so to transfer it in a deliberately indifferent manner, correct? That's correct. And this Court has described that standard in Feminist Majority Foundation as the school needs to take steps that were reasonably calculated to end the harassment or make the victim less vulnerable to further harassment. That is clearly reasonable. I don't mean to quibble over words, but reasonably calculated is just negligence. Deliberate indifference isn't negligence. I think there was some qualifying on reasonable or else we might as well not use deliberate indifference when we're talking about a reasonable standard, right? That's right, Your Honor. So that's a quote directly from Feminist Majority that I brought up. But yes, this Court and the Supreme Court has also used the words clearly unreasonable. If there are no more questions at this time, then I'll look forward to answering more in rebuttal. Thank you. Thank you very much, sir. Mr. Oxley, may it please the Court. My name is Perry Oxley and along with my co-counsel, Zach Ramey, with the law firm of Oxley Ridge-Salmons, I represent Marshall University Board of Governors. Good to have you with us, Mr. Oxley. Thank you. In this particular instance, we have a case where Marshall University clearly did not have substantial control over the context of the events that occurred. Specifically, this occurred right after a football game. There was a party at a residence not owned, leased, or controlled by Marshall University at which the party took place. Marshall did not have a student, faculty member, group organization ask for requests. Marshall University did not provide any of the funds for this party. This was simply a couple of guys who decided to have some people over to have a good time. The bottom line is that Marshall University had no mechanism at all in any way, shape, or form to know what was happening that night. In essence, it was completely separate and outside their control. Not only did they not have substantial control, they had no control. They had no idea what was going on. If we look at cases, Your Honor, to go through what it is that makes this up, if we look at the Hurley case which was referenced earlier. The Hurley case involves a scenario where you're talking about a university network being involved in that case. You're talking about a scenario where there's on-campus harassment. That's clearly official decision making and control over that situation involved. We look at Brown. In the Brown versus Arizona case, the football team had control over where Brown lived. In a separate apartment, they could move him back on campus if he didn't follow rules. The coaches were monitoring what he did. When we look at Simpson versus University of Colorado Boulder. In that particular case, they had recruiting, official football recruiting exercises. Where recruits were, quote unquote, showed a good time by going out with females to, I guess in my understanding, inappropriate sexual conduct in order to recruit them. The bottom line is that in each of these cases, in every case that I've looked at in the course of reviewing this, substantial control requires some official authority or act. In this instance, this is the classic example of a scenario in which a university doesn't have substantial control. How far off campus was it? It was within a few blocks. It was within a block or so of campus. But it was a private, not Marshall owned, not Marshall leased, not Marshall controlled. For instance, they had absolutely no control over this residence whatsoever. Any more than they would over any other private residence owned by an individual. Was it a home or apartment building? It was an apartment, is my understanding, Your Honor. Basically, it was owned by an individual who lived there and had invited Doe over to the party. Your Honor, if you look at the case law, there's absolutely no evidence of substantial control. I just want to point out that the appellant makes a continued claim that somehow the control over the harasser means that the university had control over Doe. They are separate and distinct elements, as this court pointed out earlier. You can't merge the two and confuse them together such that they become one. Is control over the context, is that an essential element of the claim? In other words, let's assume your colleague talked about, did not investigate Doe. Did not investigate prior misconduct. You may have a position on that just as a matter of that particular issue. My first question is whether control of the context, let's assume hypothetically we conclude there is none. Is that the end of the case? Yes, it is, Your Honor. Based on Davis, Your Honor, it is the end of the case. If there are other misconduct about transferring and things like that, control of the context is an essential element? Correct, Your Honor. The Davis case clearly states in order to make a claim under Title IX, it sets forth the four factors. The second factor is control over both the harasser and the context. I don't think the appellant can meet the elements set forth in Davis if they don't prove that there was not only control over the harasser, but control over the context. This all relates back to the Gerber case where Title IX had its origins. The bottom line is in that situation, we're talking about a school situation. The court talks about the fact that the entity has control over the students while they're in the school facility. Basically, Davis says, can you do student on student harassment? The extension includes this requirement that they have control over that context. Let's assume you have a serial assaulter who's a student. They've done it two or three times, school's just being lax, and then they assault someone else in a place like this, off campus, no control over it, no school-sponsored activity, things like that. But the school has knowledge of an assaulter's prior misconduct. Are you saying that's an invalid claim under Title IX? No, what I'm saying is that there's a certain class of cases called heightened scrutiny cases where an individual has, there's an LSU case that involves this exact issue where there's a series of cases prior to that the university has investigated and dealt with, and then let go or not enforced, and then this person has a subsequent event. So there's a heightened scrutiny that that person might be a problem on campus. But Doe has none of that, Your Honor, never been in trouble before in his life, never after either. Let me ask my question. Structurally, if there was evidence that Doe had been guilty of misconduct and it was known, you wouldn't have to show control of the context in that case? You would be more focused on the individual? My argument, Your Honor, would be that that case law is suggestive of the fact that the control of the context is the university's control of that individual on those prior incidences and not taking action against him, and then him going out subsequently and doing it. I think that controls the context. Yeah, which kind of does get back in a little bit in all candor to the control of the student is relevant. Those things kind of merge a little bit. I understand your position. We don't have that. I'm just trying to make sure I understand how we evaluate the claims. I think this is the clearest case of not having control of the context that I've ever seen in my career. It's very clear, based on the facts of this case, that Marshall University had no knowledge whatsoever of this. This student had a clean record, had never been in trouble in the past, and was simply a one-off incident that occurred in this particular instance for which they had become aware of at that particular point in time. I think the district court addressed that issue in their brief by saying, hey, this was cited to us by the appellant and dealt with it in that regard. Moving on, Your Honor, to the deliberate indifference. I don't believe we need to go any further than substantial control. I believe we can put the case to rest there. They don't have it. They can't prove it. The evidence is clear. There's absolutely nothing to support that. When we come to deliberate indifference, I want to first say that we went through this evaluation committee. It's very clear that Marshall's policy is, if they don't have substantial control of the context of the incidents, policy GA1, then the report or the incident gets referred to student conduct. The policy for Marshall University says it shall be dismissed, and it doesn't prevent them from moving forward under some other mechanism. In this case, that mechanism was student conduct. So they referred this incident to student conduct. It came to them from the police. Now, it's very important to understand that Roe never made a complaint to Marshall University. In fact, after the investigation, before the investigation, and after the investigation, she never came to Marshall University and said, I've got a problem here. I want to file a Title IX complaint. I want to file a complaint. After the incident and the investigation and the assigned sanction, she never came back and said, I've got a problem or something else is going on. In fact, the entire time she went to Marshall University, she never made any sort of complaint about Doe. This came to their awareness because the Huntington Police Department investigated and made a report to Marshall University. Marshall University took that report and evaluated it through their evaluation committee. After reviewing the report, they made the determination this falls within student conduct. Immediately when this got to student conduct, they issued a no-contact order. I think it's very important to understand what Roe's testimony is with respect to the no-contact order. First off, Roe received this with this email right here. She got with the no-contact order, came with this email. This email says, the order is in immediate effect until further notice. I just read it straight from you. It's JA-919. Roe testified that Doe has not attempted to contact her since September 7, 2002, and that she has not tried to contact him. Roe testified that the last time that she would have communicated with Doe would have been the night of the incident. Roe testified that no one at Marshall University ever told her the no-contact order had been lifted. Roe testified that she received the no-contact order before she ever said anything to Marshall University about the incident on September 3, 2022. In other words, they put this no-contact order in place for her benefit without her even requesting it. Far afield from deliberate indifference. Roe testified that the no-contact order issued by Marshall University benefited her. And Roe never filed a complaint with Marshall University of any kind whatsoever against Doe. Ever. In these other cases, for instance, in the Hurley case, or other cases where we have continued ongoing issues arising, where the harasser is continuing to glare at the individual or something of that nature, nothing occurred, no other incidents occurred until this day she has not had any contact with Doe. So the no-contact order was effective. They've had no contact. And this issue was resolved as a result of that. Now, it goes into an investigatory mode. The investigator is a lady by the name of Michaela Arthur. She interviewed each individual on multiple occasions over the course of several weeks. She drew the conclusion that Doe was responsible for this incident. And she found him liable for physical and emotional abuse, relationship violence, and underage drinking. And she sanctioned him by making him go through an alcohol course and doing community service, 20 hours of community service. And then she enforced and put him on probation, and she enforced that sanction against him. And he served that sanction. I mean, candidly, in instances where someone is investigated, found responsible, and sanctioned, it's hard to make the argument that the university was deliberately indifferent, particularly when they put in no-contact orders, which are effective by admission of the appellant. Now, they also, during the course of that investigation, found that she is responsible for underage drinking, and they sanctioned her for underage drinking. Now, it's also important to note that she was advised that she had the right to an advisor. She had a right to... What about the other students? Which others? Doe? Who were there that you didn't sanction. Well, we asked, the investigator asked the questions of the investigator, or asked of both Doe and Rowe, what are the names of these people? And they would not give them. They would not cooperate. They were trying to protect their friends. The only thing I believe they knew was the name Emma accompanied her. I'm not aware of the record. I don't want to speak out of turn, but they didn't know how old Emma was, and they didn't know anything else about that. And so they didn't feel like they had enough information to move forward at that particular point in time. Why wouldn't they? I mean, there's a party, there's an event that the police have been called, there's students there, a person says she's assaulted. She is not wanting to reveal names. I understand you don't have names other than one, but you got one. Did the school say, hey, let me at least ask Emma? I got one name. I don't know that they knew any more than Emma. My understanding is I don't know that Rowe wanted to provide any additional information concerning the people that were there. You know the students. There's a lot you have to rely on the district court side. You talked all about the punishment of Doe, and that's all fair, but if you line it up with Rowe's, it's the exact same thing other than 10 hours different. So putting them together, it looks maybe questionable, maybe not. We're not school conduct second-guessers or micromanagers, but just looking at that seems pretty odd given the context. And if the underage drinking is important enough that she gets effectively the same penalty as an assaulter, and one might question why you don't go to at least check out the one name you know of. My understanding, Your Honor, is from the record, more than 80 people were investigated for underage drinking during this time period and found to have violated that rule and sanctioned for it in the same capacity as Doe and Rowe in this particular instance. I don't know that I can, you know, as it pertains to the punishment, as this court just pointed out, and the Davis case is pretty clear that we have to kind of let the school administrators handle that stuff. I would also point out, as the district court pointed out in his opinion, Doe was ongoing criminal allegations and dealing with the prosecutor's office on his conduct, and I think the university was probably aware of that also. Again, I hearken back to, you know, the scope of what the student conduct is attempting to do, and I think when they're not provided or stonewalled on information concerning how to move forward, it creates difficulties. I mean, you know, I'm sure that if they had unlimited resources, they might be able to go out and follow people around and whatnot, but they have to rely upon people to cooperate with the investigation to answer questions. So with respect, moving to retaliation, Your Honor, there's no evidence at all of retaliation in this case. So... Well, they sanctioned her for underage drinking. Yeah, but... That's what he said. That was his evidence. Yes, Your Honor, and I understand what... He said he didn't have any evidence. Your Honor, I don't think they have any evidence. I really don't because we initiated the investigation. We initiated the no-contact order. We're the ones that called her in to see us. She was surprised that when she testified, she was surprised to have received the no-contact order and received that we were even involved in investigating the matter. We called her in. We interviewed her, obtained information from her, sanctioned him for his conduct. So why... I mean, it's nonsensical in my opinion, and the evidence doesn't suggest in any way that we would then sanction, that we would then come in and say, we're going to retaliate against you for cooperating with an investigation that we started and then used to punish Doe. And so... Why not? I mean, there is... Do you deny there's protected activity under the retaliation clause? What I would say, Your Honor, is that she just cooperated with an investigation. Just coming in and telling her story. I don't know that that fits this... She didn't file a complaint under Title IX. She didn't file a complaint with student conduct per se. So you don't think test... Answering questions from a school that is investigating a matter is protected activity? Well, super assuming that that's the case, Your Honor. I mean, I understand... Just assuming that that is the case. In this particular instance, we didn't retaliate. And there's no evidence, to Judge King's question earlier, there's no evidence that... There's no causal evidence that we took any action with her because she told us about Doe's conduct. In fact, the evidence suggests that based on her testimony about Doe's conduct, we punished and sanctioned Doe. A sanction he served. And so my point is that Marshall, if you take deliberate indifference... We're not dealing with that here, are we? Correct. It's retaliation. But I think all of this goes away because there's not substantial control over the incident. But that doesn't have anything to do with retaliation. Yes. So what I'm saying, though, is that in this context, there's no evidence. There's no direct evidence that Marshall took an action. There's no testimony in this case by anyone of any kind that Marshall decided, we're going to impose an underage drinking requirement or sanction against you because you came in and told us about Doe's conduct. In fact, all the evidence suggests that in obtaining that information, we then punished Doe by finding him responsible and issuing a sanction. Your Honours, I would ask that you affirm the decision. Unless there's any more questions. Thank you. Thank you, Mr. Oxley. Mr. Bowe. Your Honours, I'd like to start by addressing Roe's protected activity. My colleague says that Roe never reported sexual harassment or her sexual assault to Marshall. But that's just not true. First of all, Roe did report directly to Marshall's Student Conduct Office that Doe had harassed her multiple times prior to September 3rd. That's a direct report. And then also the Supreme Court in Crawford... When did she do that? During her first meeting with Student Conduct, she told them that Doe had shoved her and held her wrists in the past, that he had verbally and emotionally abused her. And then Student Conduct also at that point had the police report from Huntington Police. That's probably sufficient, but there were no reports before the incident, and she did not make a separate report after the incident other than in responding to questions. Is that what the record shows? Is that accurate? I think I have two responses, Your Honor. First of all, the Supreme Court has explained in its decision in Crawford that people can oppose discrimination just as surely... Right, but I mean from a factual standpoint. From what I recited, is that factually accurate? And then you can tell me whatever you want about the implications of that. That's right. Marshall heard of the September 3rd assault from Huntington Police, and Marshall heard about the pre-September 3rd harassment from Roe herself directly. So in Crawford, the Supreme Court explained that people can oppose discrimination just as surely by responding to questions from other people as by provoking the discussion themselves. It wouldn't make sense for schools to be able to preempt retaliation claims just by starting an investigation as soon as it heard of harassment without regard to the school's retaliatory motive. And then second of all, Roe may have actually filed a formal Title IX complaint or pursued further sanctions against Doe if she hadn't been punished. She actually explained that she would have spoken out publicly and filed a formal complaint if Marshall had not punished her. I'd also like to use some time to address the argument that we're somehow blurring the lines between control over harasser and control over context. We're not trying to do that. The two elements are distinct. One important thing to recognize, though, is that they are trying to answer the same basic question, which is, under the circumstances of this case, did the school have the remedial authority to address the harassment? Now, the control over harasser question specifically asks about the school's ability to circumscribe the conduct of the harasser. But for control over context, the Supreme Court chose a much broader word, context. So for control over context, we instead ask about the ability of the school to address the harassment considering all the circumstances. And that's why this court in feminist majority looked at not just location, but also what the school could have done to address the harassment, including through issuing disciplinary sanctions to the harassers and who the harassment targeted. If I may finish my response, that's also why the court in Brown v. Arizona looked expressly to disciplinary authority to determine that the school had substantial control over the context. Thank you very much, Mr. Bowe. And we appreciate the work of the students up at Boston College? University. Boston University. Make sure I get it right. Yeah, yeah. That's right. And you had some assistance, I think, from Mr. Donovan, who I know from way, way back. And we appreciate counsel's arguments and we'll take the case under advisement and adjourn court until tomorrow. Thank you, Madam Clerk. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Robert B. King, G. Steven Agee, A. Marvin Quattlebaum Jr.